**JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 23-62 JGB (KKx)** | Date | May 4, 2023 |
|---|---|---|---|
| Title | ***Eliud Ramirez v. Quad Graphics, Inc. et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order (1) GRANTING Plaintiff's Motion to Remand and for Attorney's Fees (Dkt. No. 10); (2) VACATING the May 8, 2023 Hearing; and (3) VACATING the June 26, 2023 Scheduling Conference (IN CHAMBERS)**

Before the Court is a motion to remand and for attorney's fees filed by Plaintiff Eliud Ramirez ("Plaintiff" or "Mr. Ramirez). ("Motion," Dkt. No. 10.) The Court finds the Motion appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion and **VACATES** the May 8, 2023 hearing.

## I.    BACKGROUND

On November 17, 2022, Plaintiff filed a complaint against Defendants Quad Graphics, Inc. ("Quad"), QG Printing II, LLC ("QG") (collectively, "Corporate Defendants"), Rafael Alvarez ("Mr. Alvarez"), Angelo Ortiz ("Mr. Ortiz") (collectively, "Individual Defendants"), and Does 1-100 in the Superior Court of the State of California, County of Riverside. ("Notice of Removal," Dkt. No. 1, Ex. A, "Complaint"). The Complaint asserts 18 causes of action under California law: (1) Wrongful Termination in Violation of Public Policy; (2) Retaliation; (3) Employment Discrimination Based on Disability/Medical Condition; (4) Employment Discrimination Based Upon Age; (5) Hostile Work Environment and Harassment in the Work Place; (6) Intentional Infliction of Emotional Distress ("IIED"); (7) Failure to Accommodate Disability; (8) Failure to Engage in the Interactive Process; (9) Negligent Supervision and Retention; (10) Failure to Pay Overtime; (11) Failure to Pay Meal Period Compensation; (12) Failure to Pay Rest Period Compensation; (13) Failure to Pay Wages in a Timely Manner; (14)

---

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk mg

Failure to Pay Earned Wages; (15) Failure to Pay Wages Due; (16) Waiting Time Penalties; (17) Failure to Furnish Timely and Accurate Wage Statements; and (18) Unfair Business Practices. (See Complaint.)  All causes of action are brought against the Corporate Defendants.  The fifth, sixth, tenth, eleventh, twelfth, thirteen, fifteenth, sixteenth, seventeenth and eighteenth causes of action are also asserted against Mr. Alvarez and Mr. Ortiz in their individual capacities.  (See id.)

On January 12, 2023, Defendants filed an answer in state court.  (Notice of Removal Ex. B.)  On January 13, 2023, Defendants removed the action on the basis of diversity jurisdiction, asserting that Mr. Alvarez and Mr. Ortiz are fraudulently joined or "sham" defendants.  (See Notice of Removal.)

On February 9, 2023, Plaintiff filed the Motion.  (Motion.)  In support of the Motion, Plaintiff filed a declaration of Nicholas Cameron.  ("Cameron Declaration," Dkt. No. 10-2.)  On February 17, 2023, Defendants filed an opposition.  ("Opposition," Dkt. No. 11.)  In support of the Opposition, Defendants filed a declaration of Gregory Iskander ("Iskander Declaration," Dkt. No. 11-1), a declaration of Rafael Alvarez ("Alvarez Declaration," Dkt. No. 11-2), and a declaration of Angelo Ortiz ("Ortiz Declaration," Dkt. No. 11-3).  On February 23, 2023, Plaintiff replied.  ("Reply," Dkt. No. 12.)  In support of the Reply, Plaintiff filed a declaration of Eliud Ramirez.  ("Ramirez Declaration," Dkt. No. 12-1.)

On March 9, 2023, the Court continued the hearing on the Motion from March 13, 2023 to April 3, 2023.  (Dkt. No. 13.)  On March 30, 2023, the Court continued the hearing on the Motion from April 3, 2023 to April 10, 2023.  (Dkt. No. 14.)  On April 4, 2023, the parties filed a stipulation to continue the hearing on the Motion from April 10, 2023 to April 24, 2023.  (Dkt. No. 15.)  On April 6, 2023, the Court approved the stipulation.  (Dkt. No. 16.)  On April 17, 2023, the Court set a scheduling conference for June 26, 2023.  (Dkt. No. 17.)  On April 21, 2023, the Court continued the hearing on the Motion from April 24, 2023 to May 1, 2023.  (Dkt. No. 18.)  On April 28, 2023, the Court continued the hearing on the Motion from May 1, 2023 to May 8, 2023.  (Dkt. No. 19.)

## II.    FACTUAL ALLEGATIONS

Plaintiff is a Latino man of Mexican national origin who was over the age of 40 at all relevant times and was 60 years of age when he was terminated by Defendants.  (See Complaint ¶ 14.)  Plaintiff was employed by Quad Graphics, Inc. ("Quad") and QG Printing II, LLC ("QG") in Riverside, CA as an offset first press operator for approximately 37 years until he was wrongfully terminated on December 10, 2020.  (Id. ¶ 15.)  Mr. Ramirez was fully qualified to perform his essential employment functions and duties and performed those tasks dutifully and responsibly.  (Id. ¶ 14.)

Plaintiff was discriminated against on the basis of age.  At the age of 60, he was the oldest employee working in his department.  (Id. ¶ 16.)  For this reason, Plaintiff's supervisor, Mr. Alvarez, "made consistent and repeated denigrating comments such as, but not limited to, 'you should retire' and 'why are you still working here?  You have been working here too long."  (Id.)

Younger employees received preferential treatment at work and were not pressured to get their work done. (Id. ¶ 17.) During Plaintiff's employment with Quad, management would send Plaintiff home early whenever work was slow; he was the only employee that was sent home early. Younger employees were allowed to stay at work and finish their shifts. Mr. Ramirez complained to management on several occasions about being sent home early to no avail. (Id.)

During Plaintiff's employment with Quad, he did not receive all his meal breaks or rest breaks. When he worked for more than 12 hours per day, "Defendants would alter his timecard to avoid paying Plaintiff his double-time overtime rate." (Id. ¶ 18.)

Mr. Ramirez suffers from extremely high blood pressure and was prescribed medication by a doctor. Defendants were fully aware of his medical condition. (Id. ¶ 19.) The condition is dangerous and interferes with Plaintiff's life in pervasive fashion. Despite Plaintiff's condition, Mr. Alvarez "made consistent and repeated denigrating comments and asked Plaintiff questions about Plaintiff's medical condition in an effort to mock Plaintiff," including but not limited to comments such as "did you take your meds?" and "did you take your medicine yet? There is a meeting." (Id.) "The comments were ongoing and pervasive." (Id.)

During company meetings, "Plaintiff was unnecessarily and needlessly harassed to complete all his work[,] which aggravated Plaintiff's medical condition." (Id. ¶ 20.) On one occasion, Plaintiff was forced to miss work because of his medical condition. On or about January 10, 2020, Plaintiff suffered three brain strokes and was taken to the hospital, where he remained for several days. (Id.) Plaintiff notified his immediate supervisor, Dean Tucker, that Plaintiff would be missing work and explained the situation. Plaintiff used vacation time he had accumulated to make up for the days he missed at work. (Id.) Mr. Ramirez saw his doctor for a follow-up visit after his strokes. His doctor determined that he was not ready to return to work and gave Plaintiff a doctor's note excusing him from work until on or about February 17, 2020. (Id. ¶ 21.) Mr. Ramirez provided Defendants with that doctor's note. Plaintiff continued to have follow-up visits with his doctor. On or about January 30, 2020, Plaintiff's doctor determined that Plaintiff needed more time off work to recover and extended his medical leave until March 17, 2020. (Id.) Plaintiff's doctor continued to extend the date he would return to work several times; the last doctor's note Plaintiff received was on or about October 1, 2020, which stated that Plaintiff could return to work on or about January 4, 2021. (Id.)

Shortly before he was terminated, Plaintiff received a call from the press room manager, Mr. Ortiz, who began to mock Plaintiff. Mr. Ortiz said to Plaintiff, "did you miss me? I didn't." (Id. ¶ 22.) Mr. Ortiz threatened to terminate Plaintiff's employment if he did not return to work despite Plaintiff's medical leave. (Id.)

On or about December 10, 2020, Plaintiff received a separation package, along with a termination notice, instructing Plaintiff to sign and return the enclosed documents. Mr. Ramirez did not sign the documents. (Id. ¶ 23.)

Plaintiff alleges that he was discriminated against on the basis of age, disability and medical condition.  Among the unlawful acts he alleges Defendants committed, Plaintiff asserts that he was harassed, humiliated, retaliated against, and denied reasonable accommodations for his disability.  (See id. ¶ 24.)  On or about December 23, 2021, Plaintiff filed a complaint of discrimination with the Department of Fair Employment and Housing and received his right to sue letter on the same date.  (Id. ¶ 25.)

Mr. Alvarez, a California resident, is "an employee, manager, and supervisor" of Quad "and one of Plaintiff's immediate supervisors."  (Id. ¶ 5.)  He was "directly responsible for Plaintiff's wages and hours[.]"  (Id.)  Mr. Ortiz, a California resident, is also an "employee, manager and supervisor" of Quad "and one of Plaintiff's immediate supervisors."  (Id. ¶ 6.)  He was also "directly responsible for Plaintiff's wages and hours[.]"  (Id.)

## III.    LEGAL STANDARD

### A.  Remand and Fraudulent Joinder

Pursuant to 28 U.S.C. § 1441(a), a defendant has the right to remove a matter to federal court where the district court would have original jurisdiction.  Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  Federal district courts have original jurisdiction over civil actions in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  "Complete diversity" means that "each defendant must be a citizen of a different state from each plaintiff."  In re Digimarc Corp. Derivative Litigation, 549 F.3d 1223, 1234 (9th Cir. 2008).

Removal statutes are to be strictly construed, Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal bears the burden of proving its propriety, Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996).  See Abrego v. Dow Chem. Co., 443 F.3d 676, 683-85 (9th Cir. 2006); see also Calif. ex. rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004) ("[T]he burden of establishing federal jurisdiction falls to the party invoking the statute[.]").  "[A]ny doubt about the right of removal requires resolution in favor of remand."  Moore–Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009) (citing Gaus, 980 F.2d at 566).

Removal is proper despite the presence of a non-diverse defendant where that defendant is a fraudulently joined or "sham" defendant.  Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998).  "There are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"  GranCare, LLC v. Thrower, 889 F.3d 543, 548 (9th Cir. 2018) (quoting Hunter v. Phillip Morris USA, 582 F.3d 1039, 1044 (9th Cir. 2009)).

The Ninth Circuit has emphasized that "the test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent."  Grancare, 889 F.3d at 549.  Rather than merely showing that the plaintiff has not alleged facts plausibly stating a claim for relief, a

defendant must show that there is no "*possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants[.]" Id. at 548 (internal quotation marks and citations omitted); see also Briano v. Conseco Life Ins. Co., 126 F. Supp. 2d 1293, 1296 (C.D. Cal. 2000) (defendant is disregarded as a "sham" defendant when "there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court"); Macey v. Allstate Prop. & Cas. Ins. Co., 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002) ("If there is a non-fanciful possibility that plaintiff can state a claim under California law against the non-diverse defendants the court must remand."). Thus, that a court would grant a motion to dismiss the claim is insufficient to establish fraudulent joinder. Grancare, 889 F.3d at 550. "[T]he district court must [still] consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." Id. Defendants asserting fraudulent joinder bear a "heavy burden" because of the presumption against finding defendants were fraudulently joined. Id. at 548.

When assessing whether a plaintiff states a claim against a non-diverse defendant, the failure to state a claim must be "obvious according to the well-settled rules of the state[.]" United Computer Sys., Inc. v. AT & T Corp., 298 F.3d 756, 761 (9th Cir. 2002). "In the Ninth Circuit, a non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." Nasrawi v. Buck Consultants, LLC, 776 F. Supp. 2d 1166, 1169–70 (E.D. Cal. 2011) (citing Kruso v. Int'l Tel. & Tel. Corp., 872 F.2d 1416, 1426 (9th Cir. 1989)). "In order to establish that there has been no fraudulent joinder, a plaintiff need only have one potentially valid claim against a non-diverse defendant." Knutson v. Allis-Chalmers Corp., 358 F. Supp. 2d 983, 993 (D. Nev. 2005).

"A court may look beyond the pleadings to determine if a defendant is fraudulently joined," Nasrawi, 776 F. Supp. 2d at 1170, including by considering "summary judgment-type evidence" such as declarations and deposition testimony. See Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1068 (9th Cir. 2001). "Fraudulent joinder must be proven by clear and convincing evidence." Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007). Generally, courts may look to extrinsic evidence of fraudulent joinder for the "presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant"; where a court finds itself unable to decide the defendant is fraudulently joined "in a summary manner," that "itself points to an inability of the removing party to carry its burden." Hunter, 582 F.3d at 1044 (citation omitted). In other words, "[t]o support a claim that a nondiverse defendant has been fraudulently joined, the removing party must show that the plaintiff has failed to state a valid cause of action against that nondiverse defendant, and the 'settled rules of the state' must make the failure evident by clear and convincing evidence." Tipton v. Airport Terminal Servs., Inc., 2019 WL 185687, at *5 (C.D. Cal. Jan. 14, 2019) (citation omitted).

//
//
//

---

## B.  Attorney's Fees

An order remanding a removed case to state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  Martin v. Franklin Cap. Corp., 546 U.S. 132, 141 (2005).  "In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case."  Id.

## IV.  DISCUSSION

The primary argument raised by the Motion is that Defendants have failed to meet their burden to establish that Individual Defendants may be disregarded for diversity purposes as "sham" defendants.  (See Motion.)[1]  Plaintiff also seeks attorney's fees incurred as a result of the removal.  (See id.)

Defendants have averred that Plaintiff is a citizen of California, Corporate Defendants are citizens of Wisconsin, and the amount in controversy exceeds $75,000.  (See Notice of Removal ¶¶ 9-13.)  Defendants acknowledge that Mr. Alvarez and Mr. Ortiz are citizens of California, but contend they have been fraudulently joined.  (See id. ¶¶ 14-30.)  Plaintiff disputes only the latter contention, that he is unable to state a claim against Individual Defendants.  (See Motion.)  The Court proceeds on the assumption that diversity jurisdiction would otherwise exist but for the inclusion of Individual Defendants in this action and thus assesses only whether they have been fraudulently joined.



---

[1] Although Plaintiff also appears to argue that removal is improper because Individual Defendants still have not filed a notice of joinder or consent to removal after they were served following Defendants' removal, the Court need not reach that argument.  (See Motion at 10.)  It is undisputed that Individual Defendants were not served prior to Defendants' removal of the action and that their consent was therefore not required when Corporate Defendants removed the action.  See 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been properly joined *and served* must join in or consent to the removal of the action.") (emphasis added).  As far as the Court can tell, Plaintiff argues that Defendants have not perfected removal because Individual Defendants have not consented to removal after Corporate Defendants removed the action.  The parties appear to dispute whether Individual Defendants have been served, for Plaintiff claims they have been, and both Mr. Ramirez and Mr. Ortiz declare they have not been.  (See Motion; Ramirez Declaration; Ortiz Declaration.)  No proof of service has been filed for Individual Defendants, so the Court cannot resolve this factual dispute.  In light of the Court's holding that Individual Defendants are not fraudulently joined, the Court does not reach this argument.

## A. Statute of Limitations

In the Notice of Removal, Defendants do not assert that any of Plaintiff's claims are time-barred or once mention an applicable statute of limitations. (See Notice of Removal.) Almost certainly aware of how dubious their claim that Mr. Alvarez is a "sham" defendant is in light of the specific allegations against him in the Complaint, after Plaintiff filed the Motion, Defendants have conjured a new argument: that Plaintiff's claims against Mr. Alvarez are time-barred. (See Opposition at 7-8.)

If a party asserting fraudulent joinder proves that the statute of limitations bars a claim against the nondiverse defendant, that individual may be treated as a "sham" defendant and disregarded for diversity purposes. See Ritchey, 139 F.3d at 1320. California state courts would permit a defendant to litigate a statute of limitations defense through a demurrer. See id. "Questions concerning whether an action is barred by the applicable statute of limitations are typically questions of fact." Sahadi v. Scheaffer, 155 Cal. App. 4th 704, 713 (2007) (citation omitted). "But when 'the relevant facts are not in dispute, the application of the statute of limitations may be decided as a question of law.'" Id. (citation omitted). "A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred." Guardian N. Bay, Inc. v. Superior Ct., 94 Cal. App. 4th 963, 971–72 (2001) (citations omitted). Thus, Defendants' burden to establish that the statute of limitations bars Plaintiff's claims against Mr. Alvarez is a heavy one: they must show that the *undisputed* facts, almost certainly as shown on the face of the Complaint (rather than with regard to Defendants' extrinsic, and disputed, evidence) demonstrate that every one of Plaintiff's causes of action against Mr. Alvarez are time-barred, and that this conclusion is so inescapable that there is no possibility that a state court would allow Plaintiff leave to amend the Complaint in order to state a claim against Mr. Alvarez. See Grancare, 889 F.3d at 549-50; Briano, 126 F. Supp. 2d at 1296; Macey, 220 F. Supp. 2d at 1117. Defendants wholly fail to meet this burden.

The statute of limitations for Plaintiff's claims against Mr. Alvarez is either three or four years. See Cal. Code of Civ. Proc. §§ 335.1; 338(a); Cal. Gov. Code § 12960; Cal. Bus. & Prof. Code § 17200. The sole evidence upon which Defendants rely in support of their statute of limitations argument is the Alvarez Declaration. Therein, Mr. Alvarez declares, in sum, that (1) he is currently employed as a shift supervisor at the "Box Springs" Riverside, CA QG facility; (2) starting sometime in 2010, he worked with Plaintiff as his shift supervisor at the "Jurupa" QG facility in Riverside, CA; (3) on February 8, 2015, he transferred from the Jurupa location to the Box Springs location; and (4) since his transfer, he has not worked in the Jurupa location and has "not supervised Plaintiff in any capacity." (See Alvarez Declaration ¶¶ 2-3.)

Plaintiff rebuts the Alvarez Declaration with declaration testimony of his own. He declares,

I have reviewed the declarations by my previous

supervisors and managers, Rafael Alvarez and Angelo
Ortiz.  To my best recollection, Mr. Alvarez was
transferred to another location a few years before I
was terminated in 2020.  However, for the entire time
following his transfer, Mr. Alvarez would still come to
the Jurupa Avenue location, where I worked, for
different purposes such as meetings and other purposes
known to him.  While there, Mr. Alvarez engaged the in
harassing conduct stated in the Complaint.

(Ramirez Declaration ¶ 3.)

Defendants argue that "any claim against [Mr. Alvarez] had to be brough[t] before February 8, 2019, which is four years after [he] last worked with Plaintiff."  (Opposition at 7.) This argument fails for multiple reasons.  First, a state court may not have considered Defendants' disputed extrinsic evidence if they had filed a demurrer, given that the Complaint does not state precisely when Mr. Alvarez's allegedly unlawful conduct transpired.  Second, even if a court considered extrinsic evidence, it is very unlikely that it would have decided the statute of limitations issue as a matter of law, because the parties have submitted competing evidence: essentially, Defendants claim none of the harassment or discrimination by Mr. Alvarez could have happened after 2015, but Plaintiff claims that it could have, and did, continue to happen until 2020, because Mr. Alvarez consistently interacted with him at the Jurupa facility even after Mr. Alvarez's transfer to the Box Springs location.  The fact that both facilities are located in Riverside, CA heightens the plausibility of Mr. Ramirez's assertion.  As a result, whether or not the statute of limitations barred Mr. Ramirez's claims against Mr. Alvarez is almost certainly a question of fact that a state court would find inappropriate for resolution through a demurrer. See Sahadi, 155 Cal. App. 4th at 713; Guardian, 94 Cal. App. 4th at 971-72.  For the same reasons, because the relevant facts are disputed, the Court must resolve all questions of fact in Plaintiff's favor when assessing the fraudulent joinder question.  See Nasrawi, 776 F. Supp. 2d at 1169-70. Because the evidence is more or less in equipoise, Defendants fail to prove that the relevant conduct took place outside the statute of limitations by clear and convincing evidence.  See Hamilton Materials, 494 F.3d at 1206; Tipton; 2019 WL 185687, at *5.

Even setting aside these factual issues, Defendants would need to show that, under the "well-settled rules of the state," United Computer Sys., 298 F.3d at 761, resolving "all ambiguities in the controlling state law" in Plaintiff's favor, Mr. Ramirez "could not possibly recover against" Mr. Alvarez.  Nasrawi, 776 F. Supp. 2d at 1169-70.  To make such a showing, Defendants would need to establish that the continuing violation doctrine, which applies to the California Fair Employment and Housing Act ("FEHA") claims Plaintiff brings against Defendants, including Mr. Alvarez, unequivocally did not apply.  See Accardi v. Superior Ct., 17 Cal. App. 4th 341, 349 (1993), as modified on denial of reh'g (Aug. 20, 1993) (explaining that, under the continuing violation doctrine, "a complaint arising under FEHA is timely if *any* of the discriminatory practices continues into the limitations period"); Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 802 (2001) (holding that the doctrine "allows liability for unlawful employer

conduct occurring outside the statute of limitations if it is sufficiently connected to unlawful conduct within the limitations period."). The facts alleged in the Complaint and reasonable inferences to be drawn from them demonstrate that the course of harassing and discriminatory conduct continued through Plaintiff's termination in December 2020. (See Complaint ¶ 23.) But even if they do not, for the reasons discussed above and below with regard to the additional evidence supplied by the Ramirez Declaration, it is very likely, and certainly more than a "non-fanciful possibility," Macey, 220 F. Supp. 2d at 1117, that Plaintiff *could* allege enough facts to show that the continuing violation doctrine applied through amendment. The relevant test appears to be the California Supreme Court's modified Berry[2] test, in which the continuing violation doctrine applies if the employer's unlawful actions are (1) sufficiently similar in kind; (2) they occur with sufficient frequency; and (3) they have not acquired a degree of permanence. See Richards, 26 Cal. 4th at 802. The Court cannot conclude that every state court would apply this test such that Plaintiff's claims would be barred against Mr. Alvarez.

For these reasons, the Court rejects Defendants' statute of limitations defense and considers whether Plaintiff can state a claim against Mr. Alvarez, as well as Mr. Ortiz.

## B. Claims Against Mr. Alvarez and Mr. Ortiz

In the Notice of Removal, Defendants contended that Plaintiff would be unable to state a claim against Mr. Alvarez for harassment and IIED. (See Notice of Removal ¶¶ 17-30.) Again, almost certainly realizing why that argument strains credulity, Defendants have abandoned it with regard to Mr. Alvarez in the Opposition and do not argue in the alternative that, even if the claims against Mr. Alvarez were not time-barred, Plaintiff could not state a claim against him. (See Opposition.) Instead, Defendants merely argue that Plaintiff's harassment and IIED claims fail as to Mr. Ortiz. (See id. at 8-11.)

### 1. Harassment Claim

Plaintiff alleges that Mr. Alvarez and Mr. Ortiz harassed him on the basis of age and disability in violation of FEHA. See Cal. Gov Code § 12940(j)(1). FEHA makes an employee personally liable for any harassment "perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action." Id. § 12940(j)(3). To state a claim for a hostile work environment and harassment, Plaintiff must show that he (1) belongs to a protected group; (2) was subject to unwelcome harassment; (3) the harassment complained of was on the basis of his protected classification; and (4) the harassment complained of was severe or pervasive. See Fisher v. San Pedro Peninsula Hosp., 214 Cal. App. 3d 590, 608 (Ct. App. 1989); Beyda v. City of Los Angeles, 65 Cal. App. 4th 511, 516-17 (1998).

Defendants contest only the severe or pervasive element. (See Opposition at 8.) To be "sufficiently pervasive," "acts of harassment cannot be occasional, isolated, sporadic or trivial,"

---

[2] See Berry v. Bd. of Sup'rs of L.S.U., 715 F.2d 971 (5th Cir. 1983).

but rather the "plaintiff must show a concerted pattern of a repeated, routine or a generalized nature." <u>Fisher</u>, 214 Cal. App. 3d at 610.  Defendants do not argue, nor can they, that the Complaint contains insufficient factual allegations regarding Mr. Alvarez's "concerted pattern" of harassing conduct.  The Complaint alleges that Mr. Ortiz made comments such as: "you should retire," "why are you still working here?  You have been working here too long," "did you take your meds?," "did you take your medicine yet?  There is a meeting," and so forth.  (See Complaint ¶¶ 16-18.)  Mr. Ramirez clearly alleges that these comments were illustrative of a broader pattern of conduct; he alleges that Mr. Alvarez "made consistent and repeated denigrating comments *such as, but not limited to*" those cited above, and that the "comments were ongoing and pervasive." (<u>Id.</u> ¶¶ 16, 19) (emphasis added).  Plaintiff pairs these allegations of harassing statements with potentially discriminatory acts, such as granting younger employees preferential treatment at work.  (See, e.g., <u>id.</u> ¶ 17.)  The Court finds that the allegations of harassment against Mr. Alvarez are sufficient to state a claim under Federal Rule of Civil Procedure 12(b)(6).  As such, they easily surpass the far lower threshold of the fraudulent joinder inquiry: whether the claim could survive dismissal under state court pleading standards when taking into consideration Plaintiff's ability to amend the Complaint to add further factual detail.

Defendants may be correct that Plaintiff fails to state a claim for harassment against Mr. Ortiz as presently pled in the Complaint.  The sole comment allegedly made by Mr. Ortiz in the Complaint is that, shortly before Mr. Ramirez's employment was terminated, Mr. Ortiz called Plaintiff, mocked him, and said "did you miss me?  I didn't," threatening to terminate Plaintiff's employment if he did not return to work despite Plaintiff's medical leave.  (See <u>id.</u> ¶ 22.)  At least prior to statutory amendment effective January 1, 2019, under California law, only in rare cases would a single incident of severe harassment be sufficient; courts have held that the "single incident must be severe in the extreme and generally must include either physical violence or the threat thereof." <u>Herberg v. California Inst. of the Arts</u>, 101 Cal. App. 4th 142, 151 (2002). However, in 2018, the California legislature added Cal. Gov Code § 12923, effective January 1, 2019, which provides that "[a] single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment" and affirmed precedential rejection of the "stray remarks doctrine." Cal. Gov Code § 12923(b),(c).  In doing so, the legislature explicitly rejected the holding of <u>Brooks v. City of San Mateo</u>, 229 F.3d 917 (9th Cir. 2000), in which the Ninth Circuit declared that a single incident of nonviolent sexual assault (an employee touching a fellow employee's stomach and breast under her sweater) did not rise to the level of actionable harassment.  <u>See id.</u> § (b).  Assuming the statutory amendment has lowered the bar for plaintiffs bringing hostile work environment claims, especially on the basis of a "single incident of harassing conduct," a state court may be less inclined to sustain a demurrer regarding Plaintiff's harassment cause of action against Mr. Ortiz.  But even if the allegations in the Complaint do not clear the legal threshold against Mr. Ortiz, it is possible that Plaintiff could amend it in order to state a claim against him, for he declares that he has additional facts to plead against Mr. Ortiz, such as the following: "To the best of my knowledge, Mr. Ortiz was a press/manufacturing manager of the Plant and had authority over my lead supervisors and others.  For instance, Mr. Ortiz routinely told me that I should perform like the younger workers in front of others, he

called me 'old' and '*Viejo*' (Spanish slang for an old person), and he humiliated me because of my older age." (Ramirez Declaration ¶ 5.) The Court finds that the deficiencies in the Complaint for Plaintiff's harassment claim against Mr. Ortiz can be cured through amendment and thus Defendants fail to establish that Plaintiff is unable to bring a viable cause of action against him.

Because Plaintiff need only have asserted one potentially viable claim against one of the Individual Defendants, the Court need not go further in its analysis. Nonetheless, because showing that Plaintiff could possibly bring additional claims against Individual Defendants renders Defendants' removal of the action less reasonable and is thus relevant to Plaintiff's request for attorney's fees, the Court briefly assesses additional claims.

## 2. IIED Claim

To state an IIED claim, Plaintiff must allege (1) extreme and outrageous conduct by the defendant; (2) intent to cause or reckless disregard of the probability of causing emotional distress; (3) that he suffered severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. See Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009).

Defendants argue that the allegations against Mr. Ortiz do not establish extreme and outrageous conduct. (See Opposition at 9-10.) Courts have held that a properly pled claim for workplace harassment or a hostile work environment will "constitute the outrageous behavior element" of an IIED claim because such pervasive harassment, "by its very nature . . . exceeds all bounds of decency usually tolerated by a decent society." Fisher, 214 Cal. App. 3d at 618. The Court's holdings above regarding Plaintiff's harassment claim establish that the allegations are presently sufficient, or it is possible they could be sufficient if granted leave to amend, to meet this element. Moreover, "whether conduct is 'outrageous' is usually a question of fact," rendering it inappropriate for resolution through a motion to dismiss or a demurrer. See So v. Shin, 212 Cal. App. 4th 652, 672 (2013), as modified on denial of reh'g (Jan. 28, 2013).

Defendants claim that Mr. Ortiz "asking Plaintiff whether he would be returning from medical leave is part of his personnel management duties and activities, which cannot be the basis for holding an individual liable under an IIED claim." (Opposition at 10.) Defendants' argument is a disingenuous mischaracterization of the allegations in the Complaint. Plaintiff does not allege that Mr. Ortiz simply asked him whether he would be returning from medical leave. Mr. Ramirez alleges that Mr. Ortiz called him, mocked him, said "did you miss me? I didn't," and "threatened to terminate Plaintiff's employment if he did not return to work despite Plaintiff's medical leave." (Complaint ¶ 22.) As Defendants' cited authorities reveal, managerial privilege may apply in certain circumstances. See Kacludis v. GTE Sprint Commc'ns Corp., 806 F. Supp. 866, 872 (N.D. Cal. 1992); Sheppard v. Freeman, 67 Cal. App. 4th 339, 347 (1998). But these cases are inapposite, for Plaintiff does not bring suit against Mr. Ortiz regarding his "personnel decisions"—the conduct challenged is the act of mocking, harassing and threatening him. And

because Mr. Ramirez alleges that Mr. Ortiz harassed him, supervisory employees may be held individually liable for their harassment:

> [H]arassment consists of a type of conduct not necessary for performance of a supervisory job. Instead, harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job. . . .
>
> Making a personnel decision is conduct of a type fundamentally different from the type of conduct that constitutes harassment. Harassment claims are based on a type of conduct that is avoidable and unnecessary to job performance. No supervisory employee needs to use slurs or derogatory drawings, to physically interfere with freedom of movement, to engage in unwanted sexual advances, etc. in order to carry out the legitimate objectives of personnel management. Every supervisory employee can insulate himself or herself from claims of harassment by refraining from such conduct.

Janken v. GM Hughes Elecs., 46 Cal. App. 4th 55, 63 (1996) (internal citations omitted); see also Dagley v. Target Corp., 2009 WL 910558, at *3 (C.D. Cal. Mar. 31, 2009) (concluding that a personnel manager could be liable for an IIED claim based on wrongful discharge because "a claim of intentional infliction of emotional distress is possible '[w]here the behavior goes beyond the act of termination . . . .'") (citation omitted); Calero v. Unisys Corp., 271 F. Supp. 2d 1172, 1178-79 (N.D. Cal. 2003) (finding plaintiff could state an IIED claim for alleged discriminatory termination by an individual supervisor because "California case law is replete with cases where conduct of the employer or one of its agents or employees is so outside the bounds of conduct tolerated by a decent society that it may give rise to a claim for intentional infliction of emotional distress.") (citing Kiseskey v. Carpenters' Trust for Southern California, 144 Cal. App. 3d 222, 229 (1983) (collecting cases).

Defendants next claim that Plaintiff fails to allege that his suffering constituted "severe or extreme emotional distress." (Opposition at 10.) "Severe emotional distress means 'emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it.'" Hughes, 46 Cal. 4th at 1051 (citation and brackets omitted). "Discomfort, worry, anxiety, upset stomach, concern and agitation" would be insufficient to meet this standard. See id. Plaintiff alleges that he "has suffered and continues to suffer pain, discomfort, anxiety, humiliation and emotional distress, and will continue to suffer said emotional distress in the future in an amount according to proof." (Complaint ¶ 60.) Elsewhere, he alleges he suffered "humiliation, embarrassment, and mental anguish." (Id. ¶¶ 30, 43.) He alleges "severe injuries, pain, extreme anxiety," and other harms. (Id. ¶ 56.) The

Court finds that Plaintiff has alleged distress of a sufficiently "substantial" or "enduring" quality to meet this element. Even if not, it would not be hard for Plaintiff to amend the Complaint to allege harms of a sufficiently severe nature to state a claim.

The Court therefore finds that Plaintiff states, or it is possible that he could state, a claim for IIED against Mr. Ramirez and/or Mr. Ortiz.

### 3. Wage and Hour Claims

Defendants argue that neither Mr. Alvarez nor Mr. Ortiz can be held individually liable as a matter of law for any of the labor violation claims brought against them. (Opposition at 11–13.) The California Labor Code provides that any "person acting on behalf of any employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation." Cal. Lab. Code § 558.1. "Any person acting on behalf of any employer" is further defined as "an owner, director, officer, or managing agent of the employer." Id.

Plaintiff has alleged that both Mr. Alvarez and Mr. Ortiz were "directly responsible for Plaintiffs' wages and hours and directly liable pursuant to Labor Code § 558.1." (Complaint ¶¶ 5-6.) Though it is undisputed that Individual Defendants are not owners, directors or officers, the parties dispute whether they can be considered "managing agents." (See Motion at 19; Opposition at 13; Reply at 10.) "Managing agent" in section 558.1 is defined as having the same meaning as "managing agent" in Cal. Civ. Code § 3294. Cal. Lab. Code § 558.1. Construing section 3294, the California Supreme Court has held that "supervisors who have broad discretionary powers and exercise substantial discretionary authority in the corporation could be managing agents." White v. Ultramar, Inc., 21 Cal. 4th 563, 577 (1999). However, "supervisors who have no discretionary authority over decisions that ultimately determine corporate policy would not be considered managing agents even though they may have the ability to hire or fire other employees." Id.

Defendants have filed declarations, demonstrably drafted by Defendants' Counsel, in which both Mr. Alvarez and Mr. Ortiz state, in virtually identical language, that they lack the kind of discretionary authority over corporate policy necessary to hold them liable under Section 558.1. (See Alvarez Declaration ¶ 4; Ortiz Declaration ¶ 4.) The facts asserted in these declarations may very well be true, but since Defendants certainly have an interest in including declaration testimony that Individual Defendants are supervisors with little relevant authority while excluding any evidence to the contrary, the Court cannot take potentially self-serving submissions at face value. A state court would potentially find that the allegations in the Complaint are sufficient to state a claim for Labor Code violations against Mr. Alvarez and Mr. Ortiz in their capacities as "managing agents," deferring resolution of the scope of their managerial duties to a motion for summary judgment and after Plaintiff had an opportunity to conduct discovery. Even if not, a court would likely grant Plaintiff leave to amend. On the basis

---

of managerial liability alone, it is possible that a California court could find that Individual Defendants are liable for Plaintiff's wage and hour claims.

But even if not, Plaintiff has a better theory of liability against at least Mr. Ortiz. Defendants' cited authorities all appear to state that an individual may be held liable under Section 558.1 for Labor Code violations in which he was personally involved in the violations, i.e., that the supervisor or manager engaged in individual wrongdoing. See, e.g., Carter v. Raisier-CA, LLC, 2017 WL 4098858, at *5 (N.D. Sept. 15, 2017), aff'd, 724 F. App'x 586 (9th Cir. 2018) ("Plaintiff must allege specific facts to establish that Kalanick was personally involved in the alleged violations, including withholding Plaintiff's minimum wage and overtime compensation"); Roush v. MSI Inventory Serv. Corp., 2018 WL 3637066, at *2-3 (E.D. Cal. July 30, 2018) ("Section 558.8 does not enable courts to, in effect, pierce the corporate veil to hold corporate owners, shareholders, or other officers liable for wrongdoing committed by the employer corporation.  Instead, the law makes these individuals (owners, directors, officers, or managing agents) liable for their own violations of the enumerated state laws or for causing such violation. . . . [T]he McClains may only be held liable under the statute if they themselves acted to violate or cause the violation of California's labor laws"); Plaskin v. NewSight Reality, Inc., 2019 WL 4316255, at *4 (C.D. Cal. Apr. 30, 2019); Rios v. Linn Star Transfer, Inc., 2020 WL 1677338, at *6 (N.D. Cal. 2020).

There is arguably a reasonable inference from the Complaint that either Mr. Ortiz or Mr. Ramirez was responsible for the primary Labor Code violation alleged, namely that "Defendants would alter [Plaintiff's] timecard to avoid paying Plaintiff his double-time overtime rate" (Complaint ¶ 18), since all the surrounding allegations concern Individual Defendants' misconduct.  Even if not, Plaintiff could amend the Complaint to clearly allege that Mr. Ortiz was responsible for the timecard alterations, for he now declares, "I noticed that my timecards were altered and did not accurately reflect my actual hours and overtime work; hours were missing. Upon looking into these issues, I learned that Mr. Ortiz, either himself or by instructing others such as my lead manager Mario Ruiz, altered my timecards."  (Ramirez Declaration ¶ 6.)  Should Plaintiff allege that in the Complaint, a state court would almost certainly find that he has stated a claim against Mr. Ortiz for one or more Labor Code violations.

### 4. Unfair Business Practices

Plaintiff's eighteenth cause of action asserts liability against all Defendants, including Individual Defendants, under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.  (See Complaint ¶¶ 128-130.)  That statute prohibits "unfair competition," which means any "unlawful, unfair, or fraudulent business act or practice."  Id.; Robles v. Agreserves, Inc., 158 F. Supp. 3d 952, 1007 (E.D. Cal. 2016).  The UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law."  Rossberg v. Bank of Am., N.A., 219 Cal. App. 4th 1481, 1501 (2013), as modified on denial of reh'g (Sept. 26, 2013) (internal quotations and citations omitted).  UCL liability "can lie against an officer or director who either personally commits a tort or, relevant here, personally commits the alleged UCL act or was sufficiently responsible for the commission of that act

through his personal direction or action that he may be held personally liable." <u>In re JUUL Labs,
Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.</u>, 497 F. Supp. 3d 552, 635 (N.D. Cal. 2020).

Defendants argue that, since Plaintiff asserts a UCL claim based on Labor Code violations
against Individual Defendants and those claims fail, Mr. Ramirez's UCL claim fails as well.  (<u>See</u>
Opposition at 14.)  Since the Court has held above that Plaintiff could state a claim against Mr.
Ortiz under the Labor Code, that establishes the predicate violation for his UCL claim as well.

In summary, Defendants have failed to meet their burden to establish that Individual
Defendants are fraudulently joined because Plaintiff could possibly state at least one claim against
either Mr. Alvarez or Mr. Ortiz.  Indeed, Plaintiff can establish far more than that, and
Defendants' arguments to the contrary are wholly unavailing.  The Court lacks subject matter
jurisdiction over this action and GRANTS the Motion.

## C.  Attorney's Fees

Plaintiff seeks $8,400 in attorney's fees incurred as a result of the removal.  (<u>See</u> Motion;
Cameron Declaration.)  Plaintiff's Counsel declares that he has been practicing law for 18 years,
has litigated hundreds of cases in state and federal courts, and charges an hourly fee of $400.
(Cameron Declaration ¶ 5.)  He declares that has he conservatively spent, or would spend, at
least 21.2 hours reviewing the Notice of Removal and drafting the meet-and-confer email and
subsequent conversation regarding the substance of the Motion (1.5 hours), researching the
Motion and Defendants' defenses (3.2 hours), drafting and revising the Motion (11.5 hours),
drafting the Reply (3 hours), and attending and traveling to the (anticipated) hearing on the
Motion (2 hours).  (<u>See</u> <u>id.</u>)  Although 28 U.S.C. § 1447(c) allows for Plaintiff to seek costs in
addition to attorney's fees (provided the requisite legal standard is met), Plaintiff's Counsel does
not seek any.  (<u>See</u> <u>id.</u>)

The Court may only award attorney's fees in the unusual case in which the "removing
party lacked an objectively reasonable basis for seeking removal."  <u>Martin</u>, 546 U.S. at 141.  As
such, even when it grants motions to remand, this Court rarely award's attorney's fees.
Nonetheless, the instant case presents the unusual circumstance in which an award of attorney's
fees is appropriate.

As set forth at length above, a removing party that relies upon the fraudulent joinder
doctrine has a very heavy burden to meet.  Generally, the only appropriate circumstance to
remove on that basis is when the plaintiff's complaint makes it "obvious" that he cannot state
even a single claim against a non-diverse defendant, <u>United Computer Sys.</u>, 298 F.3d at 761, such
that there is no question that a state court would dismiss the claim *without* leave to amend.
<u>Grancare</u>, 889 F.3d at 550.  It follows that a removing party must have an exceedingly good
argument for dismissal as a matter of *law*, not one in which a particular factual allegation may or
may not be insufficient, and certainly not one in which reasonable courts could disagree about
whether the factual allegations meet pleading standards.  There may be some cases in which a
plaintiff's complaint is so wholly conclusory, consisting solely of boilerplate allegations, in which

it is reasonable for a defendant to remove and argue that allowing amendment of the complaint to add further factual detail is outside the realm of reason. That might be the case where a plaintiff sues individual employees, officers or directors of a corporation but does not appear to have any basis to allege that they were personally involved in the unlawful conduct.

Although not patently frivolous, Defendants' decision to remove this action was nonetheless objectively unreasonable. Defendants had no legal defense evident from the face of the Complaint. At best, they raised a tepid statute of limitations argument in the Opposition (likely a post-hoc rationalization for the decision to remove, for that contention is never mentioned in the Notice of Removal) that rested on disputed facts. This was not a case in which the pleadings provide some unstated or implausible basis for naming individuals as defendants. To the contrary, what Mr. Alvarez and Mr. Ortiz allegedly did is the very heart of the Complaint, making it far more likely that individual liability could be imposed on them. The rest of Defendants' arguments consisted of quibbling with the sufficiency of the facts alleged in the Complaint, a dubitable proposition given the prevailing legal standard requiring the possibility of stating a claim through amendment.

Even setting aside all of the above, the decision to remove was especially unreasonable because the necessity of remand was overdetermined: though Plaintiff needed only one potentially viable claim against one nondiverse defendant, the Court has held above that he has at least four potential causes of action, at least two of which could state claims against multiple nondiverse defendants. The strong likelihood that Defendants' arguments would fall short on at least one claim was foreseeable from the moment of removal because of the gauntlet of causes of action they had to overcome to secure diversity jurisdiction. Plaintiff alleged *ten* causes of action against *two* nondiverse defendants, which meant that Defendants had to go 20 for 20 on their arguments in order to survive remand. It was never a likely prospect that they would succeed on all of them. And as it turns out, *all* of their arguments failed, some by quite a lot.

Though objective reasonableness is the standard, not subjective bad faith, there is at least a reasonable inference from the record that Defendants' Counsel knew the decision to remove was questionable at best and did it anyway. Mr. Iskander is a very experienced attorney; his law firm, Littler Mendelson P.C., is the largest labor and employment firm in the United States. Cases like this one are Defendants' Counsel's bread and butter, and so he knew, or should have known, that the fraudulent joinder theory was extremely tenuous. Plaintiff has also filed an email exchange in which Defendants' Counsel proposed that Plaintiff dismiss Individual Defendants in exchange for Defendants agreeing to produce them for deposition or trial and not seeking removal of the action. (See Motion Ex. D.) When Plaintiff's Counsel rejected the offer, explaining that Individual Defendants are "entirely appropriate defendants" and are not merely "percipient witnesses . . . in light of their conduct," Defendants' Counsel removed the action. (See id.) Plaintiff argues the decision was made in "arrant retribution" and if "Defendants genuinely believed in original federal jurisdiction, this offer should not have been made." (Motion at 3.) Defendants do not respond to the argument. (See Opposition.)

Taking the quality of the arguments raised by Defendants and the posture in which Defendants chose to remove the action together, the Court can infer that the decision to remove was an aggressive litigation tactic designed to serve Defendants' interests, regardless of the legal merits and the costs it would impose on Defendants' adversary and courts like this one. Defendants' Counsel, representing corporate entities with considerably more resources than Plaintiff, could surely have concluded that even a failed attempt to secure federal jurisdiction served his client's interests. If Plaintiff decided not to contest removal, or if a court denied a motion to remand, Defendants would be in their preferred federal forum. But even if a court granted a motion to remand, a strong likelihood given the flimsiness of Defendants' fraudulent joinder theory, Defendants would still have forced Plaintiff to spend time and money litigating the motion to remand and delayed his case (and his chance to recover damages) by a few months or more. In other words, removing would be a win-win for Defendants, a costless lottery ticket on federal jurisdiction, provided a court did not impose any costs on them. But in choosing to remove the action, Defendants imposed considerable costs on their adversary, Plaintiff, and taxed the scarce resources of this Court. If other defendants removed actions on the basis of arguments of a similar caliber to Defendants', the federal district courts would be bogged down in remanding cases that belonged in state court, draining resources from actions that properly invoke limited federal jurisdiction.

The only remedy available to force Defendants to internalize the costs of their decision to remove this action, and to deter litigants from such cavalier invocations of federal jurisdiction in the future, is to award attorney's fees to Plaintiff. Because Defendants lacked an objectively reasonable basis for seeking removal, such an award is appropriate.

Defendants do not argue that Plaintiff's Counsel's hourly fee or billable hours are inflated, so those figures are uncontested. (See Opposition.) The Court finds that Plaintiff has submitted sufficient evidence to establish that Plaintiff's Counsel's hourly rate of $400 is reasonable and consistent with prevailing rates in this District. The Court also finds that the hours Plaintiff's Counsel expended litigating the remand of this action are reasonable as well, although it deducts the two hours (and $800 in fees) Plaintiff's Counsel indicated he would have spent traveling to and appearing at the hearing on the Motion, which the Court vacates. The Court thus AWARDS Plaintiff $7,600 in attorney's fees.

## V.    CONCLUSION

For the reasons above, the Court **GRANTS** the Motion, **REMANDS** to the Riverside County Superior Court, and **AWARDS** Plaintiff $7,600 in attorney's fees. The May 8, 2023 hearing is **VACATED.** The Scheduling Conference set for June 26, 2023 is **VACATED.** The Clerk is directed to close the case.


**IT IS SO ORDERED.**